UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SHENG B. LEE YANG,

    Plaintiff,

  v.              Case No. 22-C-551

STRATEGIC BEHAVIORAL
HEALTH GREEN BAY, LLC,

    Defendant.

**DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

  Plaintiff Sheng B. Lee Yang brought this lawsuit against her former employer, Defendant Strategic Behavioral Health Green Bay, LLC (SBH), alleging that SBH discriminated against her on account of her pregnancy and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k). The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. The case is presently before the court on SBH's motion for summary judgment. The following background is taken from the parties' proposed findings of fact and evidentiary materials.

## BACKGROUND

  SBH operates the Willow Creek Facility, a behavioral and mental health hospital located in Green Bay, Wisconsin. Def.'s Proposed Findings of Fact (DPFOF) ¶ 1, Dkt. No. 16. SBH's stated mission is to provide compassionate and highly effective mental health treatment options, utilizing a collaborative team approach to care in the most appropriate setting to meet the diverse behavioral health needs of the communities it serves. *Id.* ¶ 2. Ms. Yang began working for SBH on January 2, 2017, as Director of Assessment and Referrals, a position she held throughout her

time with SBH. *Id.* ¶¶ 5–6. During the relevant time, Teena Ahuja, who served as interim director/CEO of the Willow Creek Facility, was Ms. Yang's supervisor. *Id.* ¶ 13; Pl.'s Resp. to DPFOF ¶ 13, Dkt. No. 19.

Ms. Yang learned that she was pregnant in late September 2017, approximately nine months after she started working at SBH; her due date was July 2, 2018. *Id.* ¶¶ 25–26. Ms. Yang informed Laura Majewski, SBH's Human Relations (HR) Director at the Willow Creek facility, that she was pregnant in late October 2017, and Ms. Yang informed Ms. Ahuja of her pregnancy shortly thereafter. *Id.* ¶¶ 27–28. In response, Ms. Ahuja asked Ms. Yang how much maternity leave she planned to take. *Id.* ¶ 29. Ms. Yang responded that she did not know for certain how long her maternity leave would last but guessed perhaps six weeks. *Id.* ¶ 30. Ms. Ahuja also discussed with Ms. Yang how she planned to cover her department while she was out and generally what her plans were. *Id.* ¶ 31.

Ms. Yang does not believe that Ms. Ahuja's questions were inappropriate, but she took issue with how Ms. Ahuja asked them, as she considered them to have a negative connotation. *Id.* ¶¶ 32, 34; *see also* Decl. of Corey J. Swinick, Ex. 1, Sheng B. Lee Yang Dep. at 30:05–06, Dkt. No. 17-1 (asked whether questions from Ms. Ahuja about the duration of Ms. Yang's maternity leave and how she planned to handle her department while she was gone were "appropriate," Ms. Yang responded, "I think sometimes it's not necessarily what you say but how you say it."). Ms. Yang claims that Ms. Ahuja also made a comment on one occasion suggesting that she thought SBH provided its employees with too much maternity leave. DPFOF ¶¶ 33, 35; *see also* Yang Dep. at 31:15–25. Ms. Yang further notes that on two separate occasions, once in December 2017 and once in February 2018, Ms. Ahuja asked Ms. Yang when she would stop getting "knocked up." DPFOF ¶ 38. On another occasion, Ms. Ahuja made a comment during a period when SBH

was experiencing low census numbers that Ms. Yang, who by that time was visibly pregnant, should go outside and show her legs and stomach to try and get clients to come in. *Id.* ¶ 36; *see also* Pl.'s Proposed Findings of Fact (PPFOF) ¶ 3, Dkt. No. 20. Outside of these comments, Ms. Yang does not recall any others that Ms. Ahuja made about her pregnancy. DPFOF ¶ 37.

HR Director Majewski testified that she never heard Ms. Ahuja make any derogatory comments about Ms. Yang's pregnancy while she was working at SBH, though she did recall an unrelated conversation during a leadership meeting wherein Ms. Ahuja made a comment that Ms. Yang and others present at the meeting found offensive. *Id.* ¶¶ 39–40; *see also* PPFOF ¶ 2. Ms. Ahuja's comment, directed at both men and women sitting at the table during the meeting, was to the effect that "Boys, you better comb your hair. And, girls, you better dress up and put makeup on." Pl.'s Resp. to DPFOF ¶ 41 (quoting Decl. of Colin B. Good, Ex. 1, Laura Majewski Dep. at 18:25–19:02, Dkt. No. 21-1); *see also* PPFOF ¶ 1. Ms. Majewski thought "the flavor" of Ms. Ahuja's comment, "the perception in the room, was that we needed to be more professional than what we were." Majewski Dep. at 19:07–09, Dkt. No. 21-1. Ms. Majewski testified that had Ms. Yang accused Ms. Ahuja of making derogatory comments about Ms. Yang's pregnancy while Ms. Majewski was HR Director at Willow Creek, Ms. Majewski would have had an obligation to confront Ms. Ahuja about it, and she would have remembered doing so. DPFOF ¶ 43.

Ms. Majewski left SBH in February 2018 for a new position. Majewski Dep. at 5:17–6:11. The Willow Creek Facility did not immediately replace Ms. Majewski after she left, so HR duties went to Sherrie Artman, the vice president of HR for SBH. Stacey Baker also assisted by temporarily covering as Director of HR at the facility. DPFOF ¶¶ 45–46. Following Ms. Ahuja's February 2018 comment about getting "knocked up," Ms. Yang left a voicemail on SBH's confidential HR hotline regarding her concerns about Ms. Ahuja. Ms. Artman promptly attempted

3

to return the call but did not reach Ms. Yang until March 2, 2018, at which time Ms. Yang conveyed her concern over Ms. Ahuja's pregnancy-related comments. *Id.* ¶¶ 47, 49, 54. As a follow-up to the call, Ms. Artman sent Ms. Yang an email confirming that Ms. Yang's concerns were documented and would be taken seriously and assuring Ms. Yang of her entitlement to FMLA leave and protections. *Id.* ¶ 55.

In the meantime, on March 1, 2018, Ms. Yang and Ms. Ahuja spoke by phone regarding SBH's extremely low rate of admissions. After the call was completed, Ms. Ahuja issued a final written warning to Ms. Yang in which she accused Ms. Yang of using a disrespectful tone of voice in her comments about mandatory overtime and of hanging up on her. DPFOF ¶¶ 51–52; Decl. of Swinick, Ex. 1, Yang Dep. at 51:12–52:17. Ms. Yang denied that she used such a tone or that she hung up on Ms. Ahuja. According to Ms. Yang, they disagreed with respect to potential client admissions, and the call ended with Ms. Ahuja telling Ms. Yang that she would address that the next morning. DPFOF ¶ 50; PPFOF ¶ 8. At the time, Ms. Yang states she had no sense that her phone call with Ms. Ahuja had gone poorly. PPFOF ¶ 9. There is also no evidence, however, that Ms. Ahuja was aware that Ms. Yang had complained to HR about her as of March 1, 2018, when the call occurred. DPFOF ¶ 53.

In addition to Ms. Artman's email, SBH took other steps to resolve Ms. Yang's concerns. Ms. Baker held a meeting with Ms. Yang and Ms. Ahuja on April 2, 2018, at which they discussed Ms. Yang's claim that Ms. Ahuja did not want her to take maternity leave. Ms. Ahuja denied Ms. Yang's allegations that she did not want Ms. Yang to take maternity leave but apologized to Ms. Yang if she had given her that impression. *Id.* ¶¶ 61–62. Sometime after April 6, 2018, SBH decided that the apparent conflict between Ms. Yang and Ms. Ahuja should be mediated. *Id.* ¶ 63. Mediator Susan Bauman convened a meeting on April 17, 2018. Mses. Yang, Ahuja, Baker, and

4

Artman were present. *Id.* ¶ 64. The mediation addressed Ms. Yang and Ms. Ahuja's relationship, Ms. Yang's feelings of being harassed and discriminated against, the final warning that had been placed in Ms. Yang's file, and Ms. Ahuja's concerns about certain areas in Ms. Yang's department. *Id.* ¶¶ 65, 67. Ms. Bauman noticed during the mediation that both Ms. Yang and Ms. Ahuja tended to become defensive and did not allow the other to finish speaking before responding and reacting. *Id.* ¶ 68. As a result of the mediation, the final written warning was removed from Ms. Yang's personnel file. *Id.* ¶¶ 66, 70; *see also* Pl.'s Resp. to DPFOF ¶ 70.

Ms. Yang does not claim that either Ms. Ahuja or any other SBH employee made any other comments or engaged in any behavior that she considered pregnancy-related harassment after the mediation. On May 4, 2018, Ms. Yang began her FMLA leave. DPFOF ¶¶ 71–75. Her child was born on May 28, 2018, and she took six weeks of maternity leave thereafter. *Id.* ¶¶ 76–78. SBH did not limit or even attempt to limit Ms. Yang's maternity leave. *Id.* ¶¶ 79–80. Ms. Yang did not perform any work for SBH while she was on leave. *Id.* ¶ 82. Besides Alison Denil contacting Ms. Yang to ask where certain things were located, no one from SBH contacted Ms. Yang regarding work matters during her leave. *Id.* ¶ 83. Ms. Yang had no contact or communication with Ms. Ahuja during her leave. *Id.* ¶ 84. On July 10, 2018, Ms. Yang returned to work at the same position she had before taking her leave. *Id.* ¶¶ 81, 87. Ms. Ahuja was not at the Willow Creek Facility that day or for several days after. *Id.* ¶ 88.

Upon Ms. Yang's return to SBH on July 10, 2018, she immediately submitted a letter stating her intent to resign effective August 10, 2018. The letter provided no reason for her decision to resign. *Id.* ¶¶ 89–91. Ms. Yang later testified that she resigned on the day she returned from FMLA/maternity leave because she "knew [her] career was not going to be successful," and she "felt like if [she] would have stayed, the harassment and discrimination would have

5

continued." *Id.* ¶ 92. Ms. Yang denied that anything in particular happened on July 10, 2018, that compelled her to tender her resignation. *Id.* ¶¶ 93–95.

The Willow Creek Facility's "director-level employees" held daily morning meetings to share reports about their departments' work and discuss generally the goings on at the facility. *Id.* ¶ 96. On July 23, 2018, Ms. Yang was present at the morning meeting. *Id.* ¶ 97. It was common for those present at the meeting to have their phones out and to send and receive text messages. *Id.* ¶ 98; *see also* Pl.'s Resp. to DPFOF ¶ 98. On July 23, 2018, SBH decided to accept Ms. Yang's resignation early because she was allegedly texting information from the daily morning meetings to Willow Creek's former CEO. DPFOF ¶¶ 99–100. Nevertheless, Ms. Yang was paid through August 10, 2018, the date her resignation was to become effective. *Id.* ¶ 101. SBH did not deny or withhold any bonuses from Ms. Yang because of her pregnancy or in retaliation for her complaining about discrimination. *Id.* ¶ 103.

On September 14, 2018, Ms. Yang filed a complaint with the Wisconsin Department of Workforce Development's Equal Rights Division (ERD), alleging that SBH discriminated against her because of her pregnancy and retaliated against her for opposing discrimination in the workplace. Dkt. No. 17-3. She later withdrew her complaint and requested a "Right to Sue" letter from the United States Equal Employment Opportunity Commission (EEOC). Dkt. Nos. 17-7 & 17-8. On February 8, 2022, the EEOC issued Ms. Yang a Right to Sue Letter, and on May 9, 2022, she commenced this action. Dkt. No. 17-9.

## LEGAL STANDARD

Summary judgment shall be granted when the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and make all

reasonable inferences from it in the light most favorable to the nonmoving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

Title VII of the Civil Rights Act of 1964 prohibits a covered employer from discriminating "against any individual with respect to . . . terms, conditions, or privileges of employment, because of such individual's . . . sex." 78 Stat. 253, 42 U.S.C. § 2000e–2(a)(1). In 1978, Congress enacted the Pregnancy Discrimination Act (PDA), 92 Stat. 2076, which added new language to Title VII's definitions subsection. The PDA specifies that Title VII's "ter[m] 'because of sex' . . . include[s] . . . because of or on the basis of pregnancy, childbirth, or related medical conditions." § 2000e(k); *see Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 212 (2015). Thus, discrimination against an employee because she is pregnant is a form of sex discrimination. In her complaint, Ms. Yang asserts claims for sex discrimination in violation of Title VII and the PDA and retaliation under Title VII. SBH has moved for summary judgment on both claims.

To defeat SBH's motion for summary judgment on her claim for sex discrimination, Ms. Yang would need to present evidence that, considered as a whole, would allow a reasonable jury

7

to conclude that she suffered an adverse employment action on account of her sex or pregnancy. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). An adverse employment action is also an essential element of her claim for retaliation under Title VII. *Brown v. Advocate Suburban Hosp.*, 700 F.3d 1101, 1106 (7th Cir. 2012). Ms. Yang claims that the adverse action she sustained was a constructive discharge. Pl.'s Br. in Opp'n at 9, Dkt. No. 18. It is true that a constructive discharge is a form of "adverse employment action." *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010) ("A constructive discharge constitutes an adverse employment action." (citing *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004))). Ms. Yang's problem, however, is that the evidence she offers is not even close to sufficient for a reasonable jury to conclude from it that she was constructively discharged.

"An employee is constructively discharged when, from the standpoint of a reasonable employee, the working conditions become unbearable." *Wright v. Ill. Dept. of Children & Family Servs.*, 798 F.3d 513, 527 (7th Cir. 2015). The Seventh Circuit has recognized "two different forms of constructive discharge, but neither dispenses with the requirement that the work environment had become intolerable." *Chapin*, 621 F.3d at 679. The first form occurs when "an employee resigns due to alleged discriminatory harassment." *Id.* To prevail under this form, a plaintiff must "show working conditions even more egregious than that required for a hostile work environment claim because employees are generally expected to remain employed while seeking redress, . . . thereby allowing an employer to address a situation before it causes the employee to quit." *Id.* (internal citation omitted). Ms. Yang acknowledges she has offered no evidence from which a reasonable jury could conclude she was subjected to a hostile work environment, and thus does not claim she suffered the first form of constructive discharge. Pl.'s Br. in Opp'n at 9–11.

8

"The second form of constructive discharge . . . occurs '[w]hen an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated.'" *Id.* (quoting *EEOC v. Univ. of Chi. Hosps.*, 276 F.3d 326, 332 (7th Cir. 2002)). It is this second form of constructive discharge that Ms. Yang claims she sustained. She contends that "[she] has shown sufficient facts supporting the conclusion that SBH's actions led her to the reasonable belief that she would be separated from employment with SBH." Pl.'s Br. in Opp'n at 10.

In truth, her evidence falls woefully short of any such showing. There is no evidence that SBH intended to terminate Ms. Yang's employment prior to the letter of resignation she submitted upon her return from maternity leave. Indeed, immediately after Ms. Yang complained that Ms. Ahuja commented disparagingly about her pregnancy on March 2, 2018, Ms. Artman sent Ms. Yang an email confirming that her concerns were documented and would be taken seriously and assuring Ms. Yang of her entitlement to FMLA leave and protections. DPFOF ¶ 55. Ms. Baker then held a meeting with Ms. Yang and Ms. Ahuja on April 2, 2018, at which Ms. Ahuja expressly denied that she did not want Ms. Yang to take her maternity leave and apologized if Ms. Yang thought that she did. *Id.* ¶ 62. In a further attempt to alleviate Ms. Yang's concerns, SBH arranged for a mediation of the apparent conflict between Ms. Yang and Ms. Ahuja that occurred on April 17, 2018, the outcome of which was the removal of the final written warning that Ms. Ahuja had placed in Ms. Yang's personnel file after their disputed phone call. *Id.* ¶¶ 64–66. Shortly thereafter, Ms. Yang began her leave. She offers no evidence that would suggest anyone at SBH had either the authority or the desire to terminate her employment when she returned to work on July 10, 2018, and submitted her letter of resignation. In short, Ms. Yang offers no credible evidence that SBH intended to terminate her employment or that she reasonably believed that it did.

Even if Ms. Yang had offered such evidence, it would not be enough to avoid summary judgment. This is because the second form of constructive discharge, like the first, requires that the plaintiff show her working conditions had become intolerable. *Chapin*, 621 F.3d at 679. "And a working condition does not become intolerable or unbearable merely because a 'prospect of discharge lurks in the background.'" *Id.* (quoting *Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331, 333 (7th Cir. 2004)). As Ms. Yang seems to acknowledge, she has offered no evidence that her working conditions had become intolerable or unbearable. How could they when she had just returned from six weeks of leave and Ms. Ahuja was not even present?

## CONCLUSION

It thus follows that Ms. Yang did not sustain a constructive discharge or any other form of adverse employment action. Absent evidence of an adverse employment action, she cannot prevail on either her sex discrimination or retaliation claims. SBH's motion for summary judgment must therefore be **GRANTED**. The plaintiff's claims are dismissed, and the Clerk is directed to enter judgment in favor of the defendant.

**SO ORDERED** at Green Bay, Wisconsin this 28th day of June, 2023.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge